508 So.2d 996 (1987)
STATE of Louisiana, Appellee,
v.
Milton Eugene CUPIT, Appellant.
No. 18650-KA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Rehearing Denied July 9, 1987.
*999 Dennis Stewart, Winnsboro, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Coenen, Jr., Dist. Atty., Terry A. Doughty, Asst. Dist. Atty., Rayville, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Milton Eugene Cupit, was convicted on June 7, 1986 of the second degree murder of James Allen Halley, a violation of LSA-R.S. 14:30.1. On June 13, 1986, the defendant was ordered to serve the mandatory sentence required for that offense, life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant has appealed his conviction. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
On October 9, 1983, the body of the victim, James Allen Halley, was found on the bank of the LaFourche Canal in Richland Parish. The body was discovered by the crew on a passing railroad train. Halley, a twenty-one year old victim of cerebral palsy, had suffered three gunshot wounds from a .12 gauge shotgun at close range. The wounds were located in the arm, leg, and head. The victim died as a result of shock and loss of blood.
Before his death, Halley had been scheduled to appear for trial on October 10,1983 on charges of aggravated arson. It was alleged in that case that Halley was discovered behind the Foxfire Lounge in Monroe on June 21, 1983 by the proprietor of that establishment, Carl Gwin. Halley was applying gasoline to the walls of the lounge in preparation to set it on fire. When confronted, Halley stated that the defendant, Milton Eugene Cupit, had instructed him to burn down the lounge. Halley had decided to implicate the defendant in the arson when he appeared for trial.
The defendant was questioned about Halley's death several times in October and November of 1983, but offered no information. On December 3 and 4, 1983, the defendant contacted Ouachita Parish law enforcement officials and gave taped statements concerning Halley's death.
The defendant claimed that on the evening of October 7, 1983, Halley asked the defendant to pick him up in the parking lot of a grocery store in Monroe. From there the defendant drove Halley to the trailer of Jeffrey Wayne Mann. The defendant was at that time living at the trailer with Mann. According to Cupit, Mann suggested that the trio make a drug called "crack." Mann indicated that a "stash" of the materials needed for this endeavor was located in the Russell Sage Wildlife Refuge in Richland Parish.
The defendant stated that he drove the trio in Mann's vehicle to the designated point. Upon arrival at approximately 11:00 p.m., Halley was directed to walk down an embankment to retrieve the drugs. Mann then took a sawed-off .12 gauge shotgun from the vehicle and announced he was about to kill Halley. Mann then shot Halley three times. The defendant and Mann returned to the vehicle and left the scene. The defendant stated that the pair then deposited the shotgun under J.B.'s Produce Stand in Ouachita Parish. The defendant indicated to law enforcement officials that Mann killed Halley because Halley was having an affair with Mann's wife.
The defendant was originally charged with first degree murder, but this charge was reduced to second degree murder shortly before trial. The defendant was found guilty of second degree murder and has appealed his conviction, urging numerous assignments of error. We find no merit in defendant's assignments of error and affirm his conviction.

SUFFICIENCY OF EVIDENCE
The defendant contends the trier of fact erred in finding that the prosecution presented sufficient evidence to prove beyond a reasonable doubt that he was guilty of second degree murder. We find the defendant's argument to be meritless.
*1000 LSA-R.S. 14:30.1 defines second degree murder as the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
LSA-R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
The state was, of course, required to prove the defendant guilty of the elements of the crime of second degree murder beyond a reasonable doubt.
In considering the standard of review for sufficiency of evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984).
When circumstantial evidence is relied upon, in whole or in part, the court has explained, in State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985), the interaction of the Jackson standard with this state's statutory rule concerning circumstantial evidence as follows:
The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule, however, provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is, therefore, a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it does emphasize the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of the circumstantial evidence. State v. Wright, supra; State v. Chism, 436 So.2d 464 (La.1983).
The defendant contends that the state offered numerous witnesses to prove that a crime was committed and that it was committed in Richland Parish, but presented little evidence to connect the defendant with the crime. In fact, the defendant contends that this crime was actually committed by Jeffrey Wayne Mann.
Upon reviewing this record, we find that the state presented ample evidence, both direct and circumstantial, to prove that the defendant was guilty of being a principal to the crime of second degree murder.
The defendant, by his own admission, drove the victim to the site where he was killed. The defendant knew in advance that Mann possessed the specific intent to kill Halley and yet did nothing to stop Mann or warn Halley. The defendant watched as Mann shot Halley three times.
Following the killing, all of the defendant's actions indicate his participation in the crime and his guilty knowledge. These actions constituted evidence which the jury could consider in determining that the defendant was a principal in Halley's murder.
*1001 After Halley was killed, the defendant drove Mann back to his residence, stopping along the way to conceal the murder weapon under J.B.'s Produce Stand. The defendant did not report the crime or, at that point, attempt in any way to aid law enforcement officials in the investigation of the offense.
The next day, when the victim's car keys were found in Mann's trailer, the defendant threw the keys into Bayou DeSiard to cover up the commission of the crime. Also, the defendant aided Mann in concealing the vehicle used in the commission of the crime at a neighbor's residence.
Witnesses testified at trial that the defendant and Mann were seen near the crime scene on the day following the crime, leading to the conclusion that they were checking to see if the body had been discovered.
For two months following the commission of this offense, the defendant refused to cooperate with law enforcement officials investigating the crime.
The defendant was questioned by law enforcement officials in October and November of 1983 and denied any knowledge of this offense. In December, 1983, after Mann was incarcerated on other charges, the defendant made two taped statements to law enforcement officials stating that he was present when Mann shot Halley and admitted his part in attempting to conceal the crime. The defendant then directed law enforcement officials to J.B.'s Produce Stand where the murder weapon was hidden.
The state admitted the taped statements made by the defendant and also presented testimony of individuals who established that the defendant had a motive for wanting the defendant dead. Within two days of the date Halley was killed, he was to appear in court on attempted aggravated arson charges and at that time intended to implicate the defendant in those charges.
Therefore, this record contains ample evidence upon which the trier of fact could base defendant's conviction as a principal in the crime of second degree murder. Not only does this evidence prove defendant's guilt beyond a reasonable doubt, but it also excludes every reasonable hypothesis of innocence. Therefore the trier of fact did not err in finding this defendant guilty of the second degree murder of James Allen Halley.

VENUE
The defendant claims the trier of fact erred in finding that the prosecution produced sufficient evidence to prove beyond a reasonable doubt that this offense occurred in Richland Parish, Louisiana. We find this argument to be without merit.
All trials must take place in the parish where the offense is committed, unless the venue is changed. La. Const. Art. 1 § 16 (1974); LSA-C.Cr.P. Art. 611. Even if the issue of venue has been passed upon by the judge prior to trial, the state, at trial, must prove proper venue beyond a reasonable doubt. LSA-C.Cr.P. Art. 615. Venue is a factual question and is a special issue. Therefore, review of the issue on appeal is not concerned with weighing the sufficiency of the evidence, but is limited to whether the state submitted some evidence of proper venue. State v. Adams, 394 So.2d 1204 (La.1981); State v. Skipper, 387 So.2d 592 (La.1980); State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985); State v. Miles, 450 So.2d 1067 (La.App. 1st Cir. 1984); State v. Ring, 461 So.2d 1162 (La. App. 3rd Cir.1984), writ denied 465 So.2d 732 (La.1985).
In the present case, the body of James Halley was discovered on an embankment bordering the LaFourche Canal which marks the boundary between Ouachita and Richland Parishes. The body was found on the Richland Parish side of the canal.
The defense challenged venue in Richland Parish both prior to and during the trial. The defense offered the testimony of the Richland Parish Coroner, Dr. James E. Ball, who stated that in his opinion the victim had been killed at another location. Richland Parish Deputy Sheriff Ray McBroom and Dr. Dominic DiMaio, an expert in forensic pathology, testified that in *1002 their opinion, the victim was killed at another location.
At both the pretrial hearing and at the trial, the state presented numerous witnesses and contrary evidence which showed that the victim was killed in Richland Parish. Aside from the fact that the body was found in Richland Parish, perhaps the most telling piece of evidence to establish venue was the defendant's own taped statement to law enforcement officials in which he said the offense occurred in Richland Parish.
Dr. George M. McCormick, II, who performed the autopsy on the victim, testified that, in his opinion, the victim was shot and fell and died at the location in Richland Parish where he was found. If the body had been moved from another spot to the point where it was found, blood streaks would have been found on the body and the clothing. The autopsy pictures revealed that there were no blood streaks on the body to indicate that the body had been moved or dragged. Dr. McCormick testified that the livor mortis on the face of the victim and the blood trails on the victim's face and clothing indicated that the body had not been moved prior to death. Dr. McCormick also said that the autopsy revealed no signs that the body was moved following death and prior to its discovery.
Scott Rowdon, of the Ouachita Parish Sheriff's Office, testified that the victim was clutching the grass beneath him when the body was discovered. This was consistent with Dr. McCormick's testimony that often when a victim dies suddenly, the body undergoes cadaveric spasming.
A human tooth attached to a jaw bone fragment was found in the area beneath the body. Dr. Douglas W. Owsley, a forensic pathologist at Louisiana State University, testified that the tooth was in fact that of a human, that the jagged edges of the bone fragment attached to the tooth indicated that the jaw was fractured at or near the time of death and that the fracture was caused by a traumatic injury consistent with a shotgun wound. All this was consistent with the crime having been committed where the body was found in Richland Parish.
Jay Via, of the Ouachita Parish Sheriff's Office, testified that blood spatters found on the grass around the body, and the condition of the grass itself, indicated that the victim was killed at the point where the body was discovered.
Donald French, of the Louisiana State Police, testified that the ground beneath the body was saturated with blood to a depth of three inches.
Upon our review of this record, it is apparent that the state presented ample evidence to establish proper venue. Therefore, the defendant's argument regarding venue is meritless.

MISTRIAL
The defendant contends the trial court erred in failing to grant a mistrial after a prosecution witness referred to other crimes evidence following specific instructions by the trial court not to do so. The defendant's argument is meritless.
The state called as a witness Deputy Gary Brooks of the Ouachita Parish Sheriff's Office. Brooks was in charge of investigating the attempted aggravated arson of the Foxfire Lounge for which the victim, James Halley, was scheduled to stand trial. Brooks related some of the details of his investigation and was about to relate the content of conversations with Halley when the trial court, outside the presence of the jury, instructed him that he could relate information concerning the defendant's involvement in the attempted aggravated arson but that he could not relate that Halley had implicated the defendant in other offenses concerning drugs and theft as well.
The jury returned to the courtroom and Brooks testified as to several conversations he had with Halley saying,
A.... Someprobably week later, to the best of my knowledge, he [Halley] called me and told me that he wanted to give me some more information. He wanted to get his charges dropped, meaning the *1003 charges of attempted aggravated arson. He wanted to supply me with some information pertaining to other crimes.
At that point, defense counsel objected on the ground that the witness had violated the court's instructions. Whereupon, defense counsel moved for a mistrial. The trial court denied the motion for mistrial, finding that the witness did not refer to the defendant or any other crimes alleged to have been committed by defendant, but that the reference to other crimes was to crimes in general and did not relate to the defendant in any way.
LSA-C.Cr.P. Art. 770 provides that upon the motion of defendant, a mistrial shall be granted when certain types of prejudicial remarks, including references to other crimes committed or alleged to have been committed by the defendant, are made within the hearing of the jury by the judge, district attorney or a court official. However, a law enforcement official called as a witness is not a court official, therefore LSA-C.Cr.P. Art. 770 does not apply. State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied 456 So.2d 171 (La. 1984); State v. Watson, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed. 862 (1985).
Prejudical comments not covered by LSA-C.Cr.P. Art. 770 may be dealt with either by admonition or by mistrial; however a mistrial is a drastic remedy to be used only when an admonition will not cure the prejudicial effect to the defendant. State v. James, 431 So.2d 1075 (La.App. 2d Cir.1983), writ denied 439 So.2d 1076 (La. 1983); LSA-C.Cr.P. Art. 771, 775.
A mistrial under LSA-C.Cr.P. Art. 771 may be granted at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515 (La.1982); State v. Ruble, 437 So.2d 873 (La.App. 2d Cir.1983). In this case, the reference by this witness to other crimes was general and in no way referred to other crimes committed by the defendant. The trial court was not required to grant a mistrial. State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Joseph, 341 So.2d 861 (La.1977). We do not find that the remark created any prejudice in the minds of the jury and therefore the trial court did not err in denying the defendant's motion for a mistrial.

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant claims he was denied his rights to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. The defendant claims his court appointed attorneys were ineffective at trial due to health problems and alcoholism. The defendant also claims that his attorneys did not properly prepare for trial and that they were angry with him for choosing to proceed to trial rather than accepting a plea bargain agreement offered by the state. The defendant's claim is meritless.
Ordinarily, claims of ineffective assistance of counsel are more properly raised by an application for post conviction relief filed in the trial court and upon which an evidentiary hearing may be held. This is particularly true where the claim cannot be properly assessed based upon the record before the court on appeal. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Barber, 444 So.2d 294 (La.App. 1st Cir. 1983); State v. Dauman, 468 So.2d 2 (La. App. 2d Cir.1985), writ denied 472 So.2d 41 (La.1985); State v. Woods, 444 So.2d 1332 (La.App. 2d Cir.1984); State v. Jones, 445 So.2d 26 (La.App. 4th Cir.1984).
However, where such a claim may be evaluated on direct appeal and the record before the court contains the evidence necessary to evaluate the claim, the issue may be addressed in the interest of judicial economy. State v. Williams, 464 So.2d 451 (La.App. 1st Cir.1985); State v. Tolliver, 464 So.2d 1088 (La.App. 1st Cir.1985). In the present case, the record before this *1004 court allows a review of the defendant's allegations.
Effective assistance of counsel does not mean errorless counsel or counsel which may be judged ineffective on mere hindsight. State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983). The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), has set forth guidelines to be used in evaluating claims of ineffective assistance of counsel. According to Strickland, in order for a defendant to demonstrate that the counsel's assistance was so defective as to require reversal of the conviction, he must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced him to such an extent that he was denied a fair trial. Strickland also provides that the standard to be used for judging attorney performance is that of reasonably effective assistance of counsel considering all the circumstances. The defendant must show that his counsel's performance fell below an objective standard of reasonableness. There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance.
According to Strickland, with regard to a showing of prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
Based upon the record before this court, the defendant's claims of ineffective assistance of counsel are unfounded. There is no showing that counsel's actions in representing this defendant were deficient. The defendant's counsel filed numerous pretrial motions and participated in lengthy hearings based upon objections to venue and motions to suppress evidence. At trial, the defendant's counsel subpoenaed and questioned numerous witnesses on defendant's behalf, including expert witnesses. Defense counsel objected strenuously to introduction of evidence by the state. Based upon this record, there is no showing that defendant's counsel were unprepared for trial, hampered by health or alcohol problems, or harbored any ill feelings toward the defendant. Likewise defendant has failed to show that he was prejudiced by any actions taken by his attorneys. Therefore, we find the defendant's claim that he was denied effective assistance of counsel to be meritless.

GRUESOME PHOTOGRAPHS
The defendant claims the trial court erred in allowing the state to introduce into evidence certain photographs of the victim of this offense. The defendant claimed that the state's exhibits 10-14, depicting the victim at the morgue, had little or no probative value and had a highly inflammatory and prejudicial effect upon the jury. The defendant's claim is meritless.
The test to be applied in determining the admissibility of allegedly gruesome photographs is whether the probative value of the photographs outweighs their inflammatory or prejudicial effect. State v. Spears, 350 So.2d 603 (La.1977). A ruling admitting allegedly gruesome photographs will not be overturned absent a showing that the prejudicial effect outweighed their probative value. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Eason, supra. Photographs that illustrate any facts or shed light upon any fact or issue in the case or are relevant to describe the person, place or thing depicted are generally admissible. State v. Eason, supra; State v. Kirkpatrick, 443 So.2d 546 (La. 1983), cert. denied 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985).
In the present case, the photographs complained of are not unduly offensive and the trial court did not err in admitting them into evidence. The photographs were useful in identifying the victim and in showing the location and severity of the wounds. In addition, because venue was strongly contested in this case, the photographs are useful to support the state's argument that the killing occurred in Richland Parish. The photographs depict the *1005 victim's clothing at the time he was found and illustrate the fact that blood on the clothing is not streaked or smeared as would be expected if the victim had been moved following death. Also, the blood trails on the victim's face support the notion that the body was not moved after the fatal wounds were inflicted. Therefore, we conclude that the trial court did not err in admitting these photographs.

VOLUNTARINESS OF STATEMENTS
The defendant contends the trial court erred in allowing the introduction of statements made by the defendant to law enforcement officials on the ground that the statements were made under the force of promises and inducements and were not freely and voluntarily given. The defendant's argument is without merit.
Before a confession may be introduced into evidence, the state has the burden of proving that it was given freely and voluntarily, and was not made under the influence of fear, duress, intimidation, menaces, inducements or promises. LSA-C.Cr.P. Art. 703(D); LSA-R.S. 15:451. A confession obtained by direct or implied promises, however slight, or by exertion of any improper influence must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); State v. Morvant, 384 So.2d 765 (La.1980); State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983), writ denied 440 So.2d 759 (La.1983). The admissibility of a statement or a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility will not be overturned on appeal unless they are not supported by the evidence. State v. Castillo, 389 So.2d 1307 (La.1980), cert denied. 453 U.S. 922,101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Hall, supra.
Comments by police officers that things would be easier if the defendant cooperated and made a statement do not amount to prohibitive promises or inducements designed to extract a confession. State v. Petterway, 403 So.2d 1157 (La.1981). Where officers make such statements but inform the defendant that they have no authority to extend any sort of leniency to the defendant, such statements do not equal inducements or promises negating the voluntariness of the confession. State v. Dison, 396 So.2d 1254 (La.1981).
In the present case the defendant objects to the admissibility of two tape recorded inculpatory statements made to Ouachita Parish law enforcement officers after the defendant was fully advised of his Miranda warnings. The defendant was questioned by law enforcement officials several times shortly after this murder, but he offered no information. On December 3, 1983, the defendant initiated contact with personnel of the Ouachita Parish Sheriff's Department. His first statement to those officers was "let's go get the gun." The defendant claims that in discussions with law enforcement officers about this time, Deputy Pat Willis indicated that they were more interested in "bass" like Jeffrey Wayne Mann, rather than "minnows" like the defendant. The defendant argues that this statement was an inducement which led him to believe that if he gave law enforcement officials information about this crime, that he would be given favorable treatment.
Deputy Willis admitted using the "bass" and "minnow" analogy. However, before the defendant gave his statement, he was told by law enforcement officials in Ouachita Parish that this crime occurred in another jurisdiction and that they had no authority to offer him any sort of favorable treatment. The statement made by Deputy Willis is nothing more than an exhortation to tell the truth and the defendant was aware that the Ouachita Parish law enforcement officials to whom he gave the statements concerning this crime had no authority to recommend any sort of leniency on his behalf. These facts, along with the fact that it was the defendant who initiated contact with the officers, support the trial court ruling that the defendant's statements were given freely and voluntarily and were therefore admissible evidence against him.

OTHER CRIMES EVIDENCE
The defendant contends the trial court erred in allowing the introduction of evidence *1006 of the defendant's involvement in the crime of attempted aggravated arson since the defendant had not been arrested for that offense. The defendant's argument is meritless.
To avoid the unfair inferrence that a defendant committed a particular crime simply because he is a man of bad character, evidence of the commission of another crime is generally not admissible unless the evidence has independent relevancy other than showing the criminal disposition. State v. Abercrombie, 375 So.2d 1170 (La.1979), cert. denied 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). Other crimes evidence is admissible to show knowledge, intent, or system. LSA-R.S. 15:445, 446. Such evidence is also admissible to establish the motive for the commission of a crime and such evidence has independence relevance. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. LaFleur, 398 So.2d 1074 (La.1981). Evidence of other crimes that is independently relevant and is admitted to show motive must satisfy two tests. First, there must be clear and convincing evidence that the defendant did commit the other crime. Second, the probative value of the evidence must outweigh the risk of prejudice. State v. Sutfield, supra. In the present case, the evidence that the defendant was involved in the attempted aggravated arson of the Foxfire Lounge was necessary to establish that the defendant had a motive to kill the victim of this crime. Because the establishment of a motive was necessary to the state's case, the evidence of defendant's involvement in the attempted aggravated arson had independent relevance.
The state presented clear and convincing evidence that the defendant was involved in the attempted aggravated arson. The owner of the lounge testified that defendant's sister, Dovie Elee, inquired about leasing the lounge and was upset when told it had been leased to Carl Gwin.
The state also presented the testimony of Bobby Nobles. Nobles testified who said that he was present on the night of the attempted aggravated arson. He and saw the defendant give Halley money with which to buy gasoline and heard the defendant instruct Halley to burn down the lounge. This witness also testified that shortly before Halley was to go on trial for the offense, he decided to inform the officials of the defendant's involvement in the crime.
Carl Gwin, who leased the Foxfire Lounge, testified that he apprehended Halley behind the lounge applying gasoline to the walls of the structure and that at that time Halley was very apprehensive. Halley implicated the defendant in the crime and stated that the defendant had told him to set fire to the lounge.
Gary Brooks of the Ouachita Parish Sheriff's Office who investigated this attempted arson testified that he learned from Halley that the defendant was involved in the crime and that Halley was fearful that the defendant would kill him.
Kathy Sanford testified that she often saw the victim and the defendant together in an establishment called The Bottleshop. She testified that the victim was in that establishment on the Friday evening he was killed, but that he was alone. She said that when she inquired as to the whereabouts of the defendant, the victim acted nervous and was reluctant to talk about the defendant.
We find that the state established by clear and convincing evidence that the defendant was involved in he attempted aggravated arson of the Foxfire Lounge.
In this case it was necessary for the state to establish that the defendant had a motive to kill the victim. Therefore, the probative value of this evidence to establish that motive outweighed any possible prejudicial effect and therefore, the trial judge did not err in admitting the other crimes evidence.

CONCLUSION
For the above stated reasons, we affirm the conviction of the defendant, Milton Eugene Cupit.
AFFIRMED.