511 So.2d 1214 (1987)
STATE of Louisiana, Appellee,
v.
Thomas W. ODOM, Appellant.
No. 18758-KA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1987.
Rehearing Denied September 17, 1987.
*1215 Kitchens, Benton, Kitchens & Warren by S. Michael Adcock, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton *1216 Rouge, Henry N. Brown, Jr., Dist. Atty., Benton, L. Charles Minifield, Asst. Dist. Atty., Minden, for appellee.
Before HALL, C.J., and FRED W. JONES, Jr., and SEXTON, JJ.
SEXTON, Judge.
The defendant, Thomas W. Odom, was convicted by a jury of attempted second degree murder in violation of LSA-R.S. 14:27 and 14:30.1 and sentenced to serve the maximum penalty of fifty years at hard labor. We affirm the conviction and sentence.

FACTS
Julius Mitchell testified that he was at a washateria in Heflin, Louisiana on February 8,1986. At approximately 7:30 p.m., as he left the washateria and headed toward his car, he saw a truckwhich he knew to be owned by one Monroe Moorecoming across some railroad tracks about twenty feet away from the washateria. Earlier in the day, he had seen the truck sitting in the driveway next to his house. As Mr. Mitchell was opening his car door, the truck pulled up "right behind" him. Mr. Mitchell did not recognize the driver but recognized the defendant Odom seated on the passenger side. Mr. Mitchell "jumped in the car and took off."
The truck followed Mr. Mitchell "flashing their lights for [him] to stop. But [he] wouldn't stop." About one-quarter of a mile from the washateria, a shot was fired at Mr. Mitchell's vehicle. Three shots were fired in total; one shot struck the center of the rear window and two struck the trunk. Although Mr. Mitchell knew the shots were coming from the truck, he could not see who was firing the shots or from which side of the vehicle the shots were being fired. He got to the driveway of his home some four to five minutes after the last shot was fired. The truck had followed him all the way to his home but stopped out in the road in front of his house. Mr. Mitchell got out of his vehicle, fired two shots from a .22 pistol into the air and ran to his next door neighbor's house to summon help.
Police responded to the scene and took photographs of his vehicle. Following an investigation, the police found a .30 caliber rifle in the defendant's house and arrested the defendant. Experts at the North Louisiana Crime Lab matched fragments of bullets taken from Mr. Mitchell's vehicle to the gun recovered from the defendant's home.
Jesse Beavers testified that on the date of the incident, he and the defendant were "talking about going hunting ... running some coon dogs, and ... went down to a place called Heflin." Having made several stops, Mr. Beavers and the defendant were going to pick up some coon dogs and Mr. Beavers asked the defendant if he could drive the truck they were traveling in because of the defendant's drinking and fast driving.
Mr. Beavers related the subsequent events as follows:
We went on down and getting close to a store he seen that fellow's car parked over at the side of the road. He said, that's my friend right there, said stop him. So when I pulled up behind him his friend drove out and got on the road. So I tried to stop him, so I couldn't stop him. So he took the rifle and shot at the car, at the man. I asked him what did he do that for. He said the man had messed over him.
Mr. Beavers further identified the weapon which the defendant used on the date of the incident, demonstrated the defendant's shooting at the victim's vehicle out of the passenger side of the truck, and testified that the weapon was never in his own possession. Mr. Beavers continued his testimony as follows:
And I said, man, you hit that man's car. He said, no, I didn't. I said, yes, you did. He said, I didn't hit the man's car. So the fellow that was driving this car was going on down the road, you know. I said, you hit that man's car. He said, no, I didn't. I said, yes, you did, too. We gotI drove up a little, I said, man, you're not going to shoot the man no more and he said no. I got up pretty *1217 close, I would say a pretty good ways away from him and he shot the third time, you know. And the man pulled his car off in a driveway and I pulled up and stopped because I was scared, you know, I was going to get out and go and talk to the man. The man fired back twice with some little pistol, so I drove on off.
It is noted that Mr. Beavers pled guilty to manslaughter in 1979 or 1980, was sentenced to eighteen years in jail, and was released in 1985, having spent approximately five or six years in jail. The presentence investigation report indicates that charges based upon this incident were dropped against Mr. Beavers. The defendant Odom claimed in the presentence investigation report that Jesse Beavers had actually fired the weapon.

SUFFICIENCY OF EVIDENCE

ASSIGNMENT OF ERROR NO. 1
The defendant initially contends that the state failed to prove one of the essential elements of the crime, that the defendant specifically intended to kill Mr. Mitchell.
LSA-R.S. 14:27 reads in part as follows: § 27. Attempt
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
LSA-R.S. 14:30.1(1) reads as follows: § 30.1. Second degree murder
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm.
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Jarman, 445 So.2d 1184, 1189 (La.1984); State v. Huizar, 414 So.2d 741 (La.1982); State v. Strother, 362 So.2d 508 (La.1978); State v. Butler, 322 So.2d 189 (La.1975). Although a specific intent to inflict great bodily harm may support a conviction of murder, the specific intent to inflict great bodily harm will not support a conviction of attempted murder. State in the Interest of Hickerson, 411 So.2d 585, 587 (La.App. 1st Cir.1982), writ denied, 413 So.2d 508 (La.1982), appeal after remand, 424 So.2d 1233 (La.App. 1st Cir.1982).
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it need not be proven a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981); State v. Fuller, 414 So.2d 306 (La.1982).
State v. Beck, 445 So.2d 470, 477 (La.App. 2d Cir.1984).
In reviewing a case to determine the sufficiency of the evidence, we consider the evidence in the light most favorable to the prosecution in order to determine if a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jarman, supra at 1189.
State v. Coleman, 432 So.2d 323 (La. App. 1st Cir.1983), is analogous to the instant case. The facts are related at 324 as follows:
On October 30, 1981, three white youths, including the victim, Paul Sirchia, were driving, when they encountered *1218 a group of four young black pedestrians, including defendant. Although testimony of what happened is sharply conflicting, it is clear that defendant fired six shots, including the one that struck Sirchia.
Defendant and his companions testified that the confrontation was initiated by the car's occupants, one of whom shouted a hostile racial remark at them as the car passed and then started backing up toward the group standing in the street. Defendant testified he fired a warning shot in the air and started running down a side street. It was only when the car later came up behind him again and tried to run him down that he fired any shots toward it, one of which apparently hit Sirchia, since he heard shattering glass and a scream.
The car's occupants admit that some remark was made to the group on the street, but deny that it was either hostile or racial in nature. They testified that after the car passed the group, several shots were fired, one of which hit Sirchia. As they left the subdivision to bring Sirchia to a hospital, several more shots were fired, although they were unable to see by whom. They deny ever directly encountering the defendant or his companions again or attempting to run over him.
In determining that a rational trier of fact could conclude that the defendant possessed a specific intent to kill, the court noted at page 325 as follows:
Defendant admits that he fired several shots at the occupied car at fairly close range, but claims that he did so in selfdefense. However, evidence refuting defendant's claim of self-defense was presented and the jury obviously rejected the claim. Additionally, of the six shots fired, at least three struck the car and one hit the victim; the jury could conclude that defendant deliberately aimed toward the car's occupants with an intent to kill.
In State in the Interest of Aaron, 405 So.2d 1194, 1198 (La.App. 1st Cir.1981), the court stated:
A specific intent to kill may be reasonably inferred from the defendant's intentional use of a deadly weapon in the firing of a shot aimed at the intended victim, along with the other circumstances of the case. State v. Lee, 275 So.2d 757 (La.1973); State in the Interest of Jordan, supra [348 So.2d 697 (La.App. 1 Cir.1977)].
In the instant case, the victim was not a stranger to the defendant. The defendant intentionally and repeatedly fired a deadly weapon at the victim's car. The shots, at least three, actually hit the victim's car. Importantly, one shot hit low in the center of the rear window and another hit in the center of the trunk deck.
We determine that these circumstances, when viewed in the light most favorable to the prosecution, minimally support a determination by the jury that the defendant specifically intended to kill the victim.

THE SENTENCE

ASSIGNMENTS OF ERROR NOS. 2 and 3
The defendant contends further that the trial court failed to comply with the LSA-C.Cr.P. Art. 894.1 guidelines and that the sentence is excessive. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied, 439 So.2d 1074 (La. 1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). *1219 The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La.App. 2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir. 1983), writ denied, 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra. This court has often stated that, as a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the charged offense and the worst type offender. State v. Cann, 460 So.2d 1096, 1100 (La.App. 2d Cir.1984).
Our review of the sentence reveals that the trial judge extensively articulated his reasons for imposing the maximum penalty of fifty years at hard labor in the following manner:
THE COURT: Mr. Odom, you appeared before the Court having been found guilty by a jury of the charge of attempted second degree murder. I have received the presentence investigation. The presentence investigation indicates that you're a forty-one year old black male, having been found guilty of the charge of attempted second degree murder. You're a high school drop-out. You have an unstable work history. That you're in the process of being divorced and have no children by your present marriage. You're also classified as a fifth felony offender, having an extensive criminal record, beginning in 1976 in Los Angeles, California. Your first felony conviction was October the 11th, 1986 [sic] for possession of marijuana, which, at that time, in the State of California, was a felony. You received a two year probation and paid a fine. In 1968 you were arrested for forgery with no disposition being shown. 1969 you were arrested for driving under the influence of a narcotic, which is a felony in the State of California, and you were committed, for that conviction, for some period of time. 1969 you were charged, you had possession of narcotic probation revocation hearing. You were given, together with the driving under the influence of narcotic, which is the original charge, you were given seven years and you were discharged on parole. In 1970 you were arrested for forcible rape and you were in 1971 allowed to plead guilty to statutory rape and you received a six month to fifty year sentence. You were paroled in that matter in 1976. 1971 you received, I don't understand what that is, but there was no disposition. 1973 you were convicted of possession of heroin and given a thirty day jail sentence and twenty-four month probation. 1974 you were given, found guilty of a simple burglary and given thirty days in jail and, again, in 1974 you were found to be a parole violator and you were required to finish your term. Again, in 1974, you were arrested for possession of heroin and the disposition being unknown, together withIn 1979 you were arrested in Minden for receiving stolen things, but no disposition on those charges of this particular offense. I notice that you told the probation officer who was making this report, Mr. Odom, that Mr. Beavers was the one who was doing the shooting and not you, which is inconsistent with the evidence that was placed at the trial. The Court finds that you have no remorse for your action. As a matter of fact you have denied your involvement steadfastly, that there's a strong likelihood that if you are, based upon your prior criminal record, that if you were given any type of suspended sentence that you would commit another crime.

*1220 The Court is of the opinion that you're in need of treatment which can most effectively be provided by a period of incarceration. The record also indicates that you've been given break after break after break. You have several felony charges that you received mimimal [sic] time in jail for and were placed on probation or parole and you failed to comply with those conditions, you continued your criminal activity.
The more serious issue for our review is whether the sentence was excessive under the circumstances of this case. In the defendant's favor, we cannot conclude that the circumstances in this case amount to one of the worst of attempted murders. Moreover, we note that a significant amount of time has passed since defendant's last offense, that being in 1979.
On the other hand, the record indicates that the defendant consistently has been involved in a number of serious offenses over the past several years. A number of those offenses involved narcotics.[*] Moreover, the defendant was arrested for the serious offense of forcible rape, although he pled to statutory rape.
Additionally, the defendant violated parole two times. He is a tenth grade high school drop out student. He is unemployed with an unstable work history. He admits to two children by a woman in California, but he takes no responsibility for them. He has no children from his marriage and is in the process of getting a divorce. Defendant has an extensive adult record and is at least a fifth felony offender. As the trial court found, the defendant has repeatedly been given "break after break after break" and yet he has shown no signs indicating self help. The trial court, in fact, found that the defendant completely lacked any remorse for his actions and determined that, based upon his prior criminal record and background, it was highly likely that this defendant would commit another serious offense.
Upon review of the sentencing colloquy in the instant case, we find adequate articulation of the factors upon which the trial court based its sentencing decision. The trial court's imposition of a maximum sentence of fifty years at hard labor is not so grossly disproportionate to the severity of this offense as to shock our sense of justice. Where, as here, the trial court has fully complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1, a sentence should not be set aside as excessive in the absence of a manifest abuse of the trial court's wide discretion. State v. Spencer, 374 So.2d 1195 (La.1979). While this may not be the most serious attempted murder, it was very serious and the defendant has a long history of irresponsible criminal conduct. Under the recited circumstances, we find no abuse of the trial court's discretion.
Accordingly, for the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, SEXTON, HALL, FRED W. JONES, Jr., and NORRIS, JJ.
Rehearing denied.
NOTES
[*] The record does not suggest that narcotics were involved in the instant offense, although the defendant apparently had been drinking.