521 So.2d 1214 (1988)
STATE of Louisiana, Appellee,
v.
John Henry MORRIS, Appellant.
No. 19403-KA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
*1215 Higgins & Starling by George L. Higgins, III, Pineville, for appellant.
William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., James A. Norris, Jr., Dist. Atty., Marcus R. Clark, Asst. Dist. Atty., for appellee.
*1216 Before HALL, C.J., JASPER E. JONES and FRED W. JONES, JR., JJ.
HALL, Chief Judge.
Defendant, John Henry Morris was charged by bill of information with two counts of obstruction of justice in violation of LSA-R.S. 14:130.1. After a trial by jury defendant was found guilty as to count one and sentenced to 5 years at hard labor. As to count two, defendant was found guilty of attempted obstruction of justice in violation of LSA-R.S. 14:27 and LSA-R.S. 14:130.1 and sentenced to 2½ years at hard labor. The sentences are to run consecutively. Defendant has appealed raising ten assignments of error. Finding his contentions meritless, we affirm.
On September 5, 1986, Kevin Oglesby was arrested while delivering methamphetamines for James "Bubba" Pailette. Bubba Pailette was arrested and charged by bill of information with two counts of distribution of Schedule II controlled dangerous substances. Oglesby agreed to turn state's evidence and testified against Bubba Pailette at a preliminary examination on October 28, 1986.
On November 14, 1986, Oglesby and Estess Worley stopped at Paul Temple's residence. They entered the home through the back door which opened into the kitchen. They passed through a curtain type entry which separated the kitchen and living room and sat in the living room. The only people present upon their arrival were Tracy Summerall and a small child. Shortly thereafter the defendant, who is a close friend of Bubba Pailette, and Paul Temple arrived at the residence. Paul Temple went into the living room while defendant stayed in the kitchen.
Defendant, armed with a shotgun, ordered Oglesby into the kitchen and began fighting with him. The fight continued outside the residence where defendant forced Oglesby to his knees, tried to put the barrel of the shotgun into his mouth, and told Oglesby to leave town because he would never make it to trial against Bubba Pailette.
After the fight was over defendant went into the house and told Estess Worley to get Oglesby away from there. Before allowing Estess Worley to leave, defendant aimed the shotgun at Worley and stated, "Well, you didn't hear nothing ... you didn't see nothing ... and you'd better damn well not say nothing."
Oglesby and Worley left Temple's residence and traveled to a store where an attendant gave Oglesby ice to put on his busted lip. Oglesby reported the incident to the Ouachita Parish Sheriff's Department which began searching for defendant later that night. The investigating officer stated that Oglesby appeared to be scared, upset, and had abrasions and contusions on his face, neck, back and arms. Oglesby also had a bloody nose and lip.
On November 24, 1986, ten days after the incident, the police went to the home of Paul Temple after receiving information that defendant was there. Paul Temple refused to allow the police in and stated that defendant was not there. Several deputies remained at Temple's residence to observe the house, insuring that no one came to or left the premises while other officers procured a search warrant. Upon searching Temple's attic, deputies found defendant hiding behind a central heating unit, lying in pink insulation and covered with a pink blanket.
At trial defendant testified that he was not armed with a shotgun and was not retaliating against Oglesby for testifying, but got into a fight with Oglesby concerning Lisa Odom, a mutual girlfriend.
Defendant was found guilty of obstruction of justice as pertaining to Kevin Oglesby and attempted obstruction of justice as to Estess Worley.
Assignments of Error Nos. 1 and 2
Defendant through these assignments of error contends that (1) the state while utilizing circumstantial evidence did not exclude every reasonable hypothesis of innocence as required by LSA-R.S. 15:438, and (2) the trial court erred in finding the evidence sufficient to support proof beyond a reasonable doubt of each element of obstruction of justice.
*1217 LSA-R.S. 14:130.1 provides in pertinent part:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) ...
(2) Using or threatening force toward the person or property of another with the specific intent to:
(a) Influence the testimony of any person in any criminal proceeding;
(b) Cause or induce the withholding of testimony or withholding of records, documents, or other objects from any criminal proceeding; ...
(3) Retaliating against any witness, victim, juror, judge, party, attorney, or informant by knowingly engaging in any conduct which results in bodily injury to or damage to the property of any such person or the communication of threats to do so with the specific intent to retaliate against any person for:
(a) The attendance as a witness, juror, judge, attorney, or a party to any criminal proceeding or for producing evidence or testimony for use or potential use in any criminal proceeding,....
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). The Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Sutton, 436 So.2d 471 (La.1983); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984) writ denied (463 So.2d 1317) (La. 1985). LSA-R.S. 15:438, which as to circumstantial evidence requires exclusion of every reasonable hypothesis of innocence in order to convict, provides an evidentiary guideline, emphasizes the need for careful observance of the Jackson standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Eason, supra.
Defendant was not convicted upon purely circumstantial evidence. The record reveals that upon direct evidence alone, viewed in the light most favorable to the prosecution, a rational juror could conclude that the essential elements of obstruction of justice were proven beyond a reasonable doubt.
The defendant admitted at trial that he knew Oglesby had testified against Bubba Pailette at the prior hearing and was turning state's evidence against him. Defendant admitted that the discussion and argument began when he asked Oglesby why he turned state's evidence on Bubba and told him that was a "sorry" thing to do. Defendant then contends that Oglesby provoked the fight by saying that testifying against Bubba was not as "sorry" as defendant's sleeping with Lisa Odom.
Oglesby testified that defendant beat him after saying how "sorry" he was for turning state's evidence on Bubba. Oglesby further testified that defendant stated since defendant and Bubba were "brothers," he knew that if the shoe was the other way around that Bubba would do what he was fixing to do to him. He stated that defendant then took a couple of swings at him with the shotgun in the kitchen. Defendant admitted fighting Oglesby but states that a shotgun was not involved. Oglesby testified that after Bernie Caldwell, defendant's girlfriend, arrived, defendant carried him out to a little house behind the house, forced him to get down on his knees, and threatened to blow him away. He also stated that as the confrontation ended defendant swung backwards with the gun and hit him in the mouth and nose with the butt. Oglesby further stated that defendant told him the best thing for him to do was to leave town because he would not make it to trial to witness against Bubba Pailette and stated *1218 that there never was any mention of Lisa Odom during the confrontation.
Tracy Summerall testified that she heard defendant ask Oglesby why he had done that to Bubba after all Bubba had done for him. She stated that she heard defendant say "if he had any sense he probably would have killed him [Oglesby]".
Estess Worley testified that he saw defendant standing in the entry way between the kitchen and living room swinging a shotgun in his hand. Worley stated that he could hear defendant slapping Oglesby around but was afraid to help him. He also heard defendant tell Oglesby "that he felt like just going ahead and blowing his damn head off ... if it weren't for me [Worley] that he would blow his damn head off." Defendant later came into the house, threatened Worley and told him to get Oglesby away from there.
None of the witnesses present in the living room heard any discussion about Lisa Odom. The state introduced evidence illustrating the extent of Oglesby's injuries and concerning the subsequent arrest of defendant.
From the evidence presented at trial viewed in the light most favorable to the prosecution, it has been proven beyond a reasonable doubt that defendant was guilty of obstruction of justice. The evidence, mostly direct, established that defendant retaliated against Oglesby by knowingly engaging in conduct which resulted in bodily injury and the communication of threats of bodily injury to Oglesby with the specific intent to retaliate against him for attendance as a witness in Bubba Pailette's preliminary examination and for his potential testimony against Bubba Pailette in the criminal proceeding.
These assignments of error are meritless.
Assignment of Error No. 3
Defendant contends that the trial court erred in admitting evidence of his flight after the incident. He states that the evidence was irrelevant and suspect since his flight did not occur contemporaneous with the alleged crime and may have been due to the battering of Oglesby rather than the obstruction of justice by intimidating a witness.
Relevant evidence is evidence tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. LSA-R.S. 15:441; State v. Davenport, 445 So.2d 1190 (La.1984).
The inability of officers to locate defendant after the incident was relevant to show guilty knowledge. Whether defendant's hiding was associated with a "fight" with Oglesby or for intimidating a witness is an inference which is best accorded weight by the jury. We find there to be very little prejudice associated with the evidence admitted which is outweighed by its probative value. See and compare, State v. Davenport, supra; State v. Sampson, 480 So. 2d 952 (La.App. 2d Cir.1985); State v. Buckhalter, 480 So.2d 839 (La.App. 2d Cir. 1985).
This assignment of error is meritless.
Assignment of Error No. 4
Defendant contends that the trial court erred in admitting hearsay evidence concerning whether a shotgun had been used by him.
The state asked Deputy Johnny Boyd if during his investigation, there was ever any mention to him about a shotgun being used. He responded, "Yes".
Hearsay information is inadmissible in criminal trials. LSA-R.S. 15:434. Deputy Boyd's testimony concerning the information he received was not offered to prove the truth of that information but only to show why he searched for a shotgun. As such this testimony was not hearsay and admissible. State v. Clark, 492 So.2d 862 (La.1986); State v. Turner, 392 So.2d 436 (La.1980). Furthermore, both victims testified as to seeing the shotgun under defendant's control. Defendant stated that his shotgun was in his car. Other witnesses testified that defendant either left the shotgun in his car or had seen him with it earlier that day.
This assignment of error lacks merit.
Assignment of Error No. 5
In this assignment of error defendant contends he was denied effective assistance *1219 of counsel. Defendant claims that his prior counsel failed to object to hearsay evidence, leading questions, and evidence of other crimes committed by "Bubba" Pailette.
The standard of competence required of defense counsel in a criminal case is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674, rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984):
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable ..." State v. Clark, supra.
Effectiveness of counsel is not measured by the number of objections raised. Defense counsel is not required to make every possible objection to render representation that is reasonably effective. After reviewing the record, specific questions and testimony pointed out by counsel, we do not agree that counsel's assistance was ineffective within the meaning of Strickland. We find the testimony of which defendant complains to be either admissible as non-hearsay or counsel's failure to object to be non-prejudicial to the outcome of the case.
Defendant claims that counsel failed to object to the other crimes evidence concerning Bubba Pailette which would require a mandatory mistrial under LSA-C. Cr.P. Art. 770. Defendant contends that Prieur notice was required before Oglesby could testify concerning Bubba Pailette's drug involvement. Article 770 applies to other crimes of defendant and not to other crimes evidence relating to a witness as was the case here. Notice was not required.
Counsel's performance was not deficient within the meaning of Strickland and defendant was not deprived of a fair trial i.e., a trial with a reliable result.
Accordingly, this assignment of error lacks merit.
Assignment of Error No. 6
Defendant contends that the trial court erred in overruling defendant's objection to the testimony of Deputy Johnny Boyd because of a violation of the rule of sequestration.
When Deputy Boyd was called to the witness stand, counsel for the defendant entered an objection stating that although he was not certain, the folder Deputy Boyd had with him appeared to be the same folder carried by a state police officer in the court hallway before trial. After the jury was removed, the court questioned Deputy Boyd as to whether the folder was his and where he obtained it. The officer testified that he obtained it from the Sheriff's office, it was his folder, and it was not given to him by anyone else. Based on this evidence the trial court overruled the objection.
Based on this testimony the trial court did not err. Defendant did not rebut the officer's testimony and the trial court was correct in finding no sequestration violation.
This assignment of error is meritless.
Assignments of Error Nos. 7 and 8
In assignment of error number seven defendant contends that the trial court erred in admitting into evidence state's exhibits S-1 and S-2, the bill of information and amended bill of information charging Bubba Pailette. Defendant states that this evidence was not relevant to these proceedings and no foundation was laid since the state did not affirmatively prove defendant had knowledge that Oglesby would testify against Bubba Pailette.
The exhibits were relevant to show that Bubba Pailette had been charged with a crime and that proceedings were ongoing. There is no need to show that defendant knew Oglesby would testify in Pailette's *1220 trial prior to admission of these exhibits. Defendant's knowledge, or lack thereof has nothing to do with the authenticity or origination of the documents entered into evidence.
In assignment of error number eight defendant contends that the trial court erred in limiting his impeachment of Oglesby. Defendant, while trying to impeach Oglesby concerning a prior attempted possession of marijuana conviction, was not allowed to go into the penalty Oglesby received. He contends that LSA-R.S. 15:495 which allows impeachment of witnesses by evidence of prior convictions supports the position that details of the offense may be gone into on cross examination.
While it is true that defendant may cross examine a witness about details of prior convictions, this cross examination is not without limits. The extent of inquiry into past convictions is dependent upon each individual case. State v. Williams, 445 So.2d 1171 (La.1984). Minor details of farranging and irrelevant matters such as conditions of probation, alleged but uncharged offenses, and charges dropped in response to a guilty plea may not be used to cast doubt on a witness's credibility. State v. Connor, 403 So.2d 678, 680 (La.1981). The trial judge has great discretion in determining the depth and length of cross-examination of witnesses about details of prior convictions of witnesses and his ruling will not be disturbed absent a showing of abuse of discretion. State v. Williams, supra; State v. Taylor, 448 So.2d 773 (La.App. 2d Cir.1984).
The trial court did not abuse its discretion when it would not allow defendant to go into the penalty received by Oglesby for his prior conviction. The true nature of the offense is discernable from the conviction and how defendant committed the offense, not from the sentence imposed.
This assignment of error lacks merit.
Assignments of Error Nos. 9 and 10
Through these assignments of error defendant contends that the trial court erred in permitting the state to impeach the credibility of its own witness, allowing the introduction of evidence concerning defendant's flight, and in denying defendant's motion for mistrial.
As stated earlier in this opinion the evidence of defendant's flight was relevant to the proceedings and admissible.
Defendant further argues that the state improperly tried to impeach its own witness when the state was not surprised within the meaning of LSA-R.S. 15:488.
The state questioned Paul Temple concerning the arrest of defendant. When the police initially arrived at Temple's residence and asked if the defendant was present, Mr. Temple said he was not. The state asked Mr. Temple if he lied to the police officer at that point. He responded that he had.
After reviewing all the testimony of Paul Temple it does not appear that the state was trying to impeach its own witness. At best the evidence is ambiguous and we conclude that the state was attempting to show the progression of events leading to the arrest of defendant. We see no prejudicial effect from the state's line of questioning and the trial court properly denied the motion for mistrial.
These assignments of error lack merit.
The conviction is affirmed.
AFFIRMED.