HALL, Chief Judge.
Defendant, David Washington, Jr., age 39, was charged by bill of information with two counts of attempted second degree murder in violation of LSA-R.S. 14:27 and 14:30.1. He was tried by jury, found guilty as charged on both counts, and sentenced to 50 years at hard labor on each count, the sentences to be served consecutively. Defendant appealed contending that the verdicts were contrary to the law and evidence, and the sentences imposed were excessive in violation of La. Const. Art. 1, § 20 (1974) and LSA-C.Cr.P. Art. 894.1. Finding his contentions meritless, we affirm.
I.
On the afternoon of November 16, 1987, Curtis James and Johnny Varner were in apartment no. 5 of the Parkview Apartments located in Monroe. Two black males knocked and asked for Kary Pleas. James told them that Pleas did not live there but lived upstairs. The two men left.
A short time later, defendant, also known as Sam Crockett, came to the apartment and engaged in small talk. A minute or so later, the two males returned. One of them asked for Kary Pleas again. James told him that Pleas was not there. At that point, according to James and Var-ner, defendant told the men to come in and take care of them. The taller man reached for his gun. Varner pushed James through the front door between the two men and they started running. James slipped on a wet patch and fell in the breezeway. While Varner was running he was shot in the back. One of the men stood over James and shot him in the upper portion of his leg. Defendant and the two others fled.
Both victims were taken to the hospital. The physician did not operate on Varner and left the bullet in his back. James’ injuries were extensive, requiring three operations and hospitalization for several weeks.
The victims subsequently identified defendant, and he was arrested. The two other assailants were never identified or captured.
II.
Defendant initially argues that the evidence introduced at trial is insufficient to sustain his convictions. He contends that the evidence fails to prove that he had the specific intent to kill, either directly or as a principal. He states that there was no evidence that he was armed or that he acted in a manner which would tend to establish his specific intent to kill the victims.
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir. 1988), writ denied 530 So.2d 80 (La.1988). Jackson is the objective standard for testing the-overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v, Sutton, 436 So.2d 471 (La.1983); State v. Morris, supra. LSA-R.S. 15:438, which as to circumstantial evidence requires exclusion of every reasonable hypothesis of innocence in order to convict, provides an evidentiary guideline, emphasizes the need for careful observation of the Jackson standard, and provides a helpful methodology for its implementation in cases Which hinge on the evaluation of circumstantial evidence. State v. Morris, supra; State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985).
LSA-R.S. 14:24 provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act *700 constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
LSA-R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended....
LSA-R.S. 14:30.1 provides in part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or....
The gravamen of the crime of attempted murder, whether first or second degree, is the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Huizar, 414 So.2d 741 (La.1982); State v. Odom, 511 So.2d 1214 (La.App. 2d Cir.1987), writ denied 515 So.2d 446 (La.1987). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Even though intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. LSA-R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981); State v. Odom, supra.
Defendant was not convicted on purely circumstantial evidence. There was direct evidence by the victims that defendant ordered the two men to take care of them. Defendant’s former girlfriend also testified that defendant told her he had it done.
James testified that on the date of the shooting two black males knocked on his apartment door and asked for Kary Pleas. James told them that Pleas lived upstairs. The men left. Defendant subsequently came to his apartment. Defendant engaged in casual conversation with the victims. Within a few minutes the two men returned to James’ apartment and asked for Pleas again. James again told them that Pleas did not live there. Defendant told the victims that they were dealing with someone else. Defendant stated that if the victims were going to deal with anyone that they would'be dealing with him. At that point, defendant told the two men to come on in and take care of James and Varner. One of the men pulled a gun and the other one went behind the breezeway. James tried to push his way out of the apartment but could not get through. Var-ner then pushed James through the men and out of the apartment. James ran straight ahead but slipped and fell in some water. James was not certain but he thought that he heard defendant state, “Shoot them....” The taller man stood over James and shot him in the leg. James heard two shots fired at Varner. James underwent three operations. He was in the hospital for approximately five weeks.
Johnny Varner, who was visiting James on the date of the incident, testified. He stated that initially two black males came to James’ apartment and asked for Kary Pleas. They then left. Defendant subsequently came to the apartment accompanied by the same two men. James opened the door and defendant said, “What’s happening? These two gentlemen ... these two fellows at the door want you.” Defendant asked Varner what he had behind his back. Varner replied, “Nothing.” Defendant then stated, “Just come on in and take care of these fellows.” Within seconds the men tried to force James back into the apartment. One of them reached for a gun. Varner pushed James through the men and out of the apartment. Varner and *701 James began to run. When Varner turned to run he heard defendant state, “Shoot him....” Varner was shot in the left side of his back around his shoulder blade. Varner was not operated upon and was released from the hospital within a couple of days.
Gilbert Scott, who lived near the Park-view Apartments on the date of the incident, testified. He saw three men make three or four trips up and down a trail to the Parkview Apartments. After the men made their last trip, Scott decided to walk over to the apartments. Scott saw one of the men standing in the breezeway. He heard some people arguing but he could not see them. He then heard three or four shots. Scott saw the three men run to Stacy Drive and get into a small four door yellow vehicle.
Johnnie Fay Rowe, defendant’s former girlfriend, testified. She stated that on the date of the incident defendant and two black males took her to her cousin’s house on Stacy Drive. They were riding in a small four door beige vehicle. Defendant told her that he was going to take care of some business at the Parkview Apartments. Defendant subsequently discussed the shootings with Rowe. Defendant told her that he had the shootings done because the victims were messing with his money.
Viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence for the jury to find that defendant was a principal who either aided, abetted, or directly or indirectly counselled or procured the other men to attempt to kill the victims.
Defendant’s statement to the assailants directing them to take care of the victims, and the assailants’ immediate actions in pushing James into the apartment and in ultimately firing the shots at the victims, constitute overt acts from which the jury could infer that defendant had the specific intent to kill the victims.
This assignment of error lacks merit.
III.
Defendant next contends that the trial court imposed excessive sentences in violation of La. Const. Art. 1, § 20 (1974) and LSA-C.Cr.P. Art. 894.1.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983). The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). While the trial court need not articulate every aggravating and mitigating circumstance outlined in Article 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Nealy, supra.
A sentence is constitutionally excessive in violation of La. Const. Art. 1, § 20 (1974) if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Richardson, 446 So.2d 820 (La.App. 2d Cir.1984); State v. Davis, 430 So.2d 680 (La. App. 2d Cir.1983), writ denied 433 So.2d 1056 (La.1983).
The trial court meticulously described the circumstances surrounding the instant offenses, and adequately considered the guidelines of Article 894.1.
The court recognized that defendant had been married but was currently divorced and had one child. Defendant had a 10th grade education but had obtained his G.E.D. in a penitentiary in Oregon.
The court recognized that defendant was a fifth felony offender. In 1968, defendant was convicted of grand larceny and sentenced to one year hard labor. In 1969, defendant was convicted of robbery and sentenced to 20 years at hard labor. In September of 1971, defendant was paroled. *702 In October of 1971, defendant was charged with burglary, subsequently convicted, and sentenced to seven years at hard labor. In March of 1974, defendant was paroled again. In October of 1974, defendant was charged with theft but no disposition was indicated. In 1982, defendant was convicted of armed robbery and sentenced to 20 years. Defendant escaped on January 17, 1987. The court noted that defendant had pending charges of burglary, armed robbery, simple escape, aggravated escape, distribution of cocaine, and theft.
The court stated that because of the manner in which the shootings occurred there was a significant risk of recurrence if defendant were freed. The court’s conclusion was based upon defendant’s past record which mainly included crimes involving force or weapons. The court noted that defendant had two unidentified males shoot the victims in an attempt to kill them. The court concluded that the instant offenses were reminiscent of attempted execution style killings with the motive apparently being that defendant felt the victims were infringing on his drug trade. Defendant’s repeated criminality and the violent nature of the offenses committed indicated to the court that defendant posed an unusual risk to public safety. The court noted the heartless manner in which the particular offenses were committed and defendant’s apparent lack of remorse for his actions. Defendant threatened serious bodily harm to the victims, and he contemplated that his criminal activity would cause or threaten serious harm to the victims. There were no grounds tending to excuse or justify defendant’s criminal conduct. The victims neither induced or facilitated the commission of the offenses. Defendant’s prior criminal history indicated that he was unable to engage in proper social conduct. The court determined that defendant’s past acts were the result of circumstances likely to recur. Defendant’s character and attitude indicated that he was likely to commit another crime. The court found that defendant was in need of correctional treatment that could be provided most effectively by commitment to a institution. The court finally stated that a sentence less than the one imposed would deprecate the seriousness of the offenses.
Considering the factors discussed by the trial court, defendant’s lengthy criminal record, and the severity of the offenses committed, we do not consider defendant’s sentences excessive. Defendant poses an unusual risk to public safety. Defendant caused serious and severe injuries to the victims. If the victims had not broken free the incident could have resulted in their deaths. This case involves the most serious violation of the offense, and defendant is the worst type of offender. This assignment of error lacks merit.
Defendant’s convictions and sentences are affirmed.
AFFIRMED.