704 So.2d 443 (1997)
STATE of Louisiana, Appellee,
v.
John Westley NEELEY, Appellant.
No. 30008-KA.
Court of Appeal of Louisiana, Second Circuit.
December 23, 1997.
*444 Ron Miciotto, Shreveport, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Karen Avery, Assistant District Attorneys, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
Defendant, John Westley Neeley, was charged with felony possession of a firearm in violation of La. R.S. 14:95.1. A jury convicted Neeley of the offense and the court sentenced him to 4 years at hard labor without benefit of probation, parole or suspension of sentence. Our review reveals a lack of sufficient evidence to convict requiring reversal of the conviction and sentence.
On September 24, 1994 at approximately 4:45 a.m., Officers Jason Brook and Jeff Gilmour responded to a phone call of a disturbance at 2720 Vivian Street in Shreveport. The defendant, who owned the house but resided elsewhere, had been in a fight with a woman, Greer, who resided in the house. After drinking heavily and gambling, the pair had returned to the house. After a sexual encounter between the two, Greer became incensed when Neeley attempted to telephone his girlfriend to come and get him. A scuffle ensued and Greer retrieved a rifle she had hidden in her mother's bedroom between two mattresses and fired it into the ceiling of the house.
The defendant, Neeley, owned the house and maintained an office in the dining room. The separate garage was converted to a shop to operate his printing equipment and industrial knife sharpening business. Neeley's stepbrother, Jerry Roach, handled the blade sharpening business while Neeley himself handled the machine repair business. Greer, who resided in the house with her mother, had provided secretarial services for the business. Neeley lived with his girlfriend in another location in Shreveport.
Officer Brook testified that when he arrived at the Vivian Street house, he initially spoke with the defendant, who smelled of alcohol and was somewhat intoxicated. Neeley stated that Ms. Greer got a gun and *445 attempted to shoot him but shot the ceiling instead.
Officer Brook said the gun was located in the living room of the house leaning against the back of a chair. The gun was a single shot .22 caliber rifle. Brook said that Neeley told him that he did not need to get into any more trouble due to a previous conviction and probation and that he knew that he was not supposed to have a gun. Brook testified that Neeley said it was a bad neighborhood and that the reason why he had the gun was for protection. Brook also testified, however, that Neeley said the gun belonged to his brother-in-law and that he was holding on to it for him. Brook admitted that Neeley was never in actual possession of the firearm and there was no fingerprint evidence introduced that Neeley had ever handled the rifle. Officer Brook also admitted that Neeley's statement that "he knew he was not supposed to have a firearm" was apparently in response to a statement by Officer Brook regarding possession of the firearm.
Officer Gilmour testified that he spoke with Ms. Greer at the scene of the disturbance. He testified that he overheard Neeley tell Officer Brook that he knew he was not supposed to have a gun and that it was being kept for his brother.[1] Gilmour corroborated Brook's testimony that Neeley smelled of alcohol and both Greer and the defendant were drunk. Gilmour testified that Neeley was both standing and stumbling and was loud. Gilmour testified that Greer and her mother had been living at the house a few weeks and that the defendant said he wanted them out of the house as a result of that night's scuffle.
In Greer's testimony she admitted that after having sex with Neeley, he wanted to go home. When he was going to call his girlfriend to come a get him, Greer became angry and slapped him, and a scuffle ensued. She then retrieved the rifle from between two mattresses in her mother's bedroom where she had hidden it and fired it in the hallway into the ceiling. Neeley was on the sofa in the living room at this time. She said that she then placed the gun behind the chair and went to the back room to calm her mother. The evidence revealed that Greer was charged by the arresting officers with illegal discharge of a firearm and battery.
Greer further testified that Neeley's step-brother, Jerry Roach, worked at the office/house/shop everyday, and that she had seen Neeley there only once in the three weeks preceding the incident. She testified that she did not pay Neeley rent, but did secretarial work and billing for the businesses in exchange for being allowed to live at the house rent free. Neeley's step-brother, Roach, gave her the gun for protection of her mother and children after there had been shootings in the neighborhood. She also testified that Neeley never had possession of or touched the gun.
Roach testified that he purchased the single shot .22 rifle 10 years earlier from a pawn shop or another individual. He said that he worked almost daily sharpening industrial blades for Neeley's "Mr. Sharp" business in the shop behind the house. He stated that Neeley repaired copy machines in the four state area and was out of town more often than not. He corroborated Ms. Greer's testimony that Neeley was rarely at the Vivian street address except to drop off blades for him to sharpen. He said he had the gun in the shop himself before Neeley was convicted of the felony and that Neeley had told him he had to get the gun off of the premises after he was convicted of the cocaine possession charge. He recalled that Neeley had moved out of the Vivian Street house about one month prior to the incident to move in with Neeley's girlfriend. He said Ms. Greer had been living at the house about a week when he gave her the gun.
Neeley testified that he did not recall much of the evening because he had become so drunk. He did not recall the gunshot or talking to the police. He stated that after he moved into the trailer with his girlfriend, he had only been to the Vivian Street house once or twice. He wanted Ms. Greer to live *446 in the house because he did not want to leave it vacant.
Neeley now appeals his conviction of possession of a firearm by a convicted felon claiming that the state failed to prove beyond a reasonable doubt that the defendant had constructive possession of a firearm, and that defendant was not read his Miranda rights prior to being interrogated by the police.

Discussion
In order to convict a defendant of possession of a firearm by a convicted felon the state is required to prove beyond a reasonable doubt (1) possession of a firearm; (2) conviction of any enumerated felony; (3) absence of the ten year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1;[2]State v. Husband, 437 So.2d 269 (La.1983); State v. Lewis, 535 So.2d 943, (La.App. 2d Cir.1988); State v. Miller, 499 So.2d 281 (La.App. 1st Cir.1986). General intent is shown when the proof shows that the perpetrator carried on his person a firearm. State v. Woods, 94-2650 (La.App. 4th Cir. 4/20/95), 654 So.2d 809, writ denied, 951252 (La.6/30/95), 657 So.2d 1035 (La.1997). However, when the perpetrator has not carried the firearm on his person, the state must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence. State v. Woods, supra; State v. Heacox, 543 So.2d 101 (La.App. 3d Cir.1989).
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir.1988). Jackson is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Sutton, 436 So.2d 471 (La.1983); State v. Morris, supra. La. R.S. 15:438, which deals with circumstantial evidence, requires exclusion of every reasonable hypothesis of innocence in order to convict. It provides an evidentiary guideline, emphasizes the need for careful observation of the Jackson standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Morris, supra; State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the evidence by viewing that evidence in the light most favorable to the prosecution. In determining sufficiency, an appellate court must review all the evidence presented at trial, even that which might have been erroneously admitted. When the evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's responsibility when reviewing sufficiency of evidence does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The critical inquiry is not what a reviewing judge may believe, but instead, whether a rational juror could have found that the evidence proved guilt beyond a reasonable doubt. Jackson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In this case, the state never contended that the defendant had actual possession of *447 the firearm and introduced no evidence whatsoever, by way of objective evidence such as fingerprints on the firearm or testimony, that defendant had ever touched the rifle. Nor did the state ever establish ownership of the firearm by the defendant or any chain of custody of the firearm which would somehow place the firearm in the actual possession of the defendant.
Nevertheless, constructive possession, as opposed to actual possession, is sufficient to satisfy the possession element. State v. Day, 410 So.2d 741 (La.1982); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La. 1993). Constructive possession is demonstrated when the state shows the firearm was subject to defendant's dominion and control. State v. Washington, supra. (Emphasis ours.) A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if the control is shared. State v. Washington, supra, and cases cited therein.
It is well-settled that mere presence in an area where contraband is found or mere association with an individual found to be in possession of such does not necessarily establish possession. State v. Viera, 449 So.2d 644 (La.App. 4th Cir.1984), writ denied, 450 So.2d 962 (La.1984). However, an individual found in close proximity to an area where contraband is located may be considered in constructive possession if the contraband is subject to his dominion and control. The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Walker, 514 So.2d 602 (La.App. 4th Cir.1987); State v. Trahan, 425 So.2d 1222 (La.1983); State v. Heacox, 543 So.2d 101 (La.App. 3d Cir.1989).
In State v. Lewis, supra, the defendant claimed that he was prejudiced by the admission into evidence statements he made to an officer regarding ownership of certain guns found during a search of the defendant's home. Defendant had stated that a .9mm assault weapon belonged to his wife, a shotgun belonged to his brother, and a .45 cal. pistol belonged to him; however, these statements were not included in response to a discovery request for the substance of any oral statements the defendant made which the state intended to offer at trial. This court held that the admission was harmless error because the critical factor in showing constructive possession was not the statements, but the presence of the guns in different locations in the defendant's residence and bedroom, testimony that directly rebutted his statement that his wife owned the.9mm weapon, and the presence of a manual regarding the use of that weapon in the defendant's dresser drawer.
In State v. Fisher, 94-2255 (La.App. 1st Cir. 12/15/95), 669 So.2d 460, writ denied, 96-0958 (La.9/20/96), 679 So.2d 432, the court reversed the conviction for possession of a firearm by a felon and ordered the defendant released holding that, although the defendant was clearly aware of the gun's presence in the vehicle, there was no evidence his intent amounted to an intent to possess the gun rather than mere acquiescence to the fact his sister owned a gun and had the gun in her purse, citing State v. Heacox, 543 So.2d at 106 (La.App. 3d Cir.1989). Defendant had also put a clip of ammunition in his pocket, but the court stated that, while the defendant's physical possession of the ammunition is relevant to establish his knowledge and general intent, considering the manner in which he came into possession of the clip, the presence of the clip on his person did not show his intent to exercise dominion and control over the gun. Defendant's sister testified that she removed the clip before giving the gun to the guard at the gate. She also testified that she then must have placed the clip on the seat. Defendant's sister owned the gun and stored the gun in her purse. The court found that the evidence, even when viewed in the light most favorable to the prosecution, was not sufficient to establish the essential elements of the crime beyond a reasonable doubt
In the case at bar, the state's case against the defendant for constructive possession was based primarily upon the defendant's statements at the time of his arrest, his ownership of the residence, and his presence in the house where the firearm was located. However, in making out its case for *448 constructive possession, there were other facts revealed in the state's evidence that weighed against the defendant's dominion and control of the rifle. First, the state's evidence revealed that Greer and her mother were in fact living in the house which served as their residential dwelling. The state did not attempt to prove that Neeley was actually living on a day-to-day basis with Greer. Second, Greer was shown by the state's evidence to have been the last person in actual possession of the gun. She was arrested for its illegal discharge. Third, defendant was not shown at any time before or after the incident to have had actual possession of the rifle.
From those three factors, the weight of the state's proof of defendant's ownership of the house and his presence near the rifle is greatly diminished as evidence tending to prove his dominion and control over the gun. Standing alone without defendant's admissions to the officers, the state's evidence amounts to a showing of an assault upon the defendant by a disgruntled tenant within the defendant's building where the tenant resided. Such evidence allows the reasonable hypothesis that both the occupancy of the building and the dominion and control over the weapon were Greer's and not Neeley's.
The state's case rested therefore on Neeley's admissions, and those admissions had to overcome the countervailing evidence of Greer and her mother's occupancy of the house and Greer's actual use of the rifle. The strongest expression indicating constructive possession was Neeley's statement that the reason why he (Neeley) had the gun was for protection. Neeley was also reported to have said that he was holding on to the gun for Roach. On cross examination restating and merging both of these expressions by Neeley, Officer Brook stated:
A. He never stated that he was holding on to the gun, all he stated was that he was holding on to it at the house forhis brother-in-law had given it to him for protection. Basically he was holding on to it for him.
* * * * * *
A. He never told me that he was holding on to it or you know actually had it in his hands when we got there. All he stated was he was holding on to it for his brother-in-law for protection.
* * * * * *
From these statements or admissions by Neeley, when read in the light most favorable to the state, there is some indication that the defendant may have had knowledge of the presence of the gun for protection in the house before Greer obtained it and fired it. The statement of the gun's presence for protection, however, is far from a specific admission that before Greer's assault, Neeley knew of the gun's location in the house and could exercise dominion and control over it for his protection or other use.
The statements can also be viewed as an expression by Neeley that Neeley recognized the gun as Roach's gun which had been kept at his residence in the past for protection from the "bad neighborhood." Neeley, who desired the officers to effectively arrest and evict Greer from the premises for her assaultive behavior, was clearly claiming the gun for Roach. Yet, Neeley's claim for the gun for Roach's benefit was also stated to the officers with his admission that he was not allowed to have the gun as a convicted felon. All of these statements were made by Neeley while he was under the influence of alcohol thus tending to explain the ambiguity of the statements when the statements are considered as a whole. Though the officers stated that Neeley's speech was not slurred, they nevertheless did not deny that he was intoxicated.
As indicated above, La. R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2); State v. Godeaux, 378 So.2d 941 (La.1979), rehearing denied January 28, 1980. Thus, in view of his lack of actual possession, the evidence must show that Neeley must have adverted to the fact that he had the gun within his dominion and control.
*449 If the state did not prove beyond a reasonable doubt that Neeley knew of the gun's presence at the scene prior to Greer's obtaining the gun and assaulting him, then we believe the element of general intent or Neeley's awareness of his dominion and control over the gun was lacking. In this case, Neeley's statement that the gun was at the residence for protection from the bad neighborhood when considered with all of his statements to the police, does not sufficiently prove that Neeley knew of the gun's presence before the assault and could have exercised his dominion and control over the gun before Greer used the gun to assault him.
Moreover, when the uncontradicted defense evidence is considered, the evidence showed that Greer obtained the gun from the bedroom in the house and that Roach, and not Neeley, had previously given her the gun for her protection in residing in the house. Nothing that the state put into evidence directly disputed Greer's sole dominion and control of the gun up to the time of her assault upon Neeley.
In summary, the totality of the evidence hardly makes a case for "knowledge and intent" to possess the firearm to establish general intent. It is simply not plausible to maintain the position that the defendant had knowledge and intent to possess when he voluntarily told the police that Greer fired the rifle at him in the house, voluntarily announced that he was a felon and wanted to stay out of trouble, and directed the officer to the rifle to be confiscated, all the while knowing that he would go to jail for possession of the rifle. The more reasonable hypothesis is that the defendant had no knowledge of the rifle's presence when he entered the home that night, had no intention to possess the firearm and thought, when he contacted the police, that Ms. Greer had dominion and control of the rifle and not himself.
For these reasons, we reverse the conviction and sentence of the defendant and order the defendant released.
CONVICTION AND SENTENCE REVERSED; DEFENDANT ORDERED RELEASED.
BROWN, J., dissents with reasons.
BROWN, Judge, dissenting.
Defendant, who was on probation for a possession of cocaine conviction, stated to the police officers that it was his house and he wanted Ms. Greer removed. He further stated that he was holding, i.e., possessing, the gun for protection. Those statements made at the scene were direct evidence which the jury obviously believed. Our review standard requires that we consider the facts in the light most favorable to affirm the jury's verdict. Credibility of witnesses was for the jury to determine.
NOTES
[1] Testimony of Officers Brook and Gilmour indicates that they recalled Neeley referring to the gun as belonging to either a brother or brother-in-law. Jerry Roach, who testified at trial that the gun belonged to him, was in fact Neeley's step-brother.
[2] At the time of this offense, the penalty possession of a firearm by a convicted felon was three to ten years at hard labor without benefit of parole, probation or suspensition of sentence. By 1995 Act No. 987, § 1 the legislature raised the minimum sentence to ten years at hard labor without benefit.